1

2

3

4

5

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8

9 NICHOLAS JACKALONE and LUCIA           No. C 09-2956 MHP
  JACKALONE

10           Plaintiffs,                  **MEMORANDUM & ORDER**

11   v.                                   **Re:  Defendants' Motion for Summary
                                          Judgment**
12 CITY OF FREMONT, et al.,

13           Defendants.
                                    /

14

15          Plaintiffs Nicholas Jackalone and Lucia Jackalone brought this action against, among others,

16 the City of Fremont ("City") and City Chief of Police Craig Steckler ("Chief") (collectively

17 "defendants") alleging two causes of action under 42 U.S.C. section 1983 and negligent infliction of

18 emotional distress against these defendants.  Docket No. 1 (Complaint).  Before the court is

19 defendants' motion for summary judgment, which plaintiffs oppose.  Having considered the parties'

20 arguments and submissions and for the reasons stated below, the court enters the following

21 memorandum and order.

22

23 BACKGROUND

24          The facts are primarily undisputed and unless otherwise noted, taken from the joint statement

25 of undisputed facts.  Docket No. 29 (JSUF).

26          The incident occurred on the night of June 8, 2008.  Plaintiff Nick Jackalone, an off-duty

27 firefighter for the City of Richmond, was returning home from a concert at Pacific Bell Park, which

28 he had attended with his wife, plaintiff Lucia Jackalone, and five of their friends, Max and Sheila

*United States District Court*
For the Northern District of California

Taliferro, Jimmy and Sandra Torres, and Chris Johnson.  Prior to the end of the concert, the group left the stadium to return home.

Plaintiffs and their friends boarded public transportation heading toward the BART station where they planned to transfer.  After they boarded, plaintiffs observed two men who appeared intoxicated, defendant Nicholas Maurer and his friend Vincent Bedolla.  Bedolla was hanging onto the rail, while Maurer attempted to hold him up.  Bedolla was buckling at his knees, had his eyes closed, and leaned his head against the entry doors such that he would fall if the doors opened.  As the train left the station, Mrs. Jackalone addressed Maurer, and advised him to watch out for his friend so that he would not fall out when the doors opened.  In response, Bedolla told Mrs. Jackalone, to "shut up" and to "mind her own business."  As the train approached the next stop, Mrs. Jackalone cautioned Maurer to watch his companion.  Bedolla raised his head and told her to "fucking mind her own business," called her a "white bitch," and asked "who do you think you are?"  Mrs. Jackalone responded that she was looking out for him, to which Maurer and Bedolla responded with further profanity.

Upon hearing both Maurer and Bedolla verbally accost his wife, Mr. Jackalone told them not to speak to his wife in that manner.  A verbal altercation between Mr. Jackalone, and Maurer and Bedolla ensued.  Mrs. Jackalone then touched her husband's arm and they both stopped speaking to Maurer and Bedolla.  Maurer and Bedolla stopped their tirade.  The train pulled into the station and the Jackalone passed Maurer and Bedolla while exiting.  As Mr. Jackalone passed, Bedolla pushed him, and Maurer and Bedolla followed plaintiffs out of the train.

Another verbal exchange ensued between plaintiffs, and Maurer and Bedolla.  Then, trying to disengage themselves from Maurer and Bedolla, plaintiffs and their party withdrew from the verbal exchange and began to proceed up the escalator to the BART station.  As the party waited to board the escalator, Bedolla was assaulted by an unknown third party—a man who was not with the Jackalone group and who ran away after assaulting Bedolla.  Bedolla and Maurer then pursued plaintiffs up the escalator and into the BART station.

2

United States District Court
For the Northern District of California

1    It is BART policy that bay area police officers, including those from the City of Fremont,

2    may ride the train for free, whether on- or off-duty, and whether in uniform or plain clothes.  These

3    officers must show a badge or police identification to get past the fare gate.  Station agents reserve

4    the right to turn away anyone (including peace officers) who are too intoxicated to care for

5    themselves.  Off-duty police officers, however, can and do ride the train for free, even when they are

6    intoxicated.

7    Maurer flashed his badge and police identification to the BART station agent and said he was

8    looking for someone who had hit his friend, and entered the station through the security gate.

9    Maurer stood out to the station agent because he announced to the agent that he was looking for

10   someone.  Based on this representation, the station agent believed that Maurer was investigating

11   something.  The BART station agent also believed Maurer was off-duty because Maurer was visibly

12   intoxicated.  On the night of the incident, other intoxicated people also entered the

13   station through the security gate by showing their badges.

14   Plaintiffs proceeded to enter the BART station.  As they stood in line to gain access to the

15   platform through the fare gate, they observed that Maurer had already gained entry and was searching

16   through the crowd.  Both plaintiffs wondered how Maurer got access so quickly.  Seeing Maurer

17   there caused them trepidation.

18   As Mr. Jackalone entered the fare gate, Maurer, who was already inside the station,

19   approached Mr. Jackalone, grabbed him and began screaming, "Why did you hit my friend?" and

20   began physically assaulting Mr. Jackalone.  Although the fight was broken up by the rest of the

21   Jackalone group, Maurer then assaulted Mr. Jackalone a second time, and the two men began

22   scuffling on the ground.  The group pulled Maurer off Mr. Jackalone, and Maurer then tackled Mrs.

23   Jackalone to the ground.  The group managed to break up the fight again and tried to move quickly to

24   get to their BART train.

25   Once on the BART platform, the Jackalone party headed toward the end of the platform,

26   where Maurer engaged in a third physical assault on Mr. Jackalone.  A bystander intervened to break

27

28

3

1    up the third fight and Maurer was taken away by BART police.  Plaintiffs and their friends were also

2    escorted away by BART police and questioned about the incident.

3         After the entire incident was over, plaintiffs learned, for the first time, that Maurer was an

4    off-duty police officer.  During the incident, plaintiffs never received or asked any information that

5    Maurer was off-duty or working in an undercover capacity.  During the fight, Maurer never identified

6    himself as a police officer to plaintiffs.  Maurer was not wearing anything that would indicate he was

7    a police officer, nor did he show plaintiffs his badge.  Maurer did not tell plaintiffs he was an officer,

8    nor did he say anything to them that indicated he was attempting to place them under arrest.

9    Plaintiffs did not believe Maurer was on-duty, undercover or otherwise, and they were surprised

10   when they learned that the person who had attacked them was an off-duty police officer.

11

12   LEGAL STANDARD

13        Summary judgment may be granted only when, drawing all inferences and resolving all

14   doubts in favor of the non-moving party, there are no genuine issues of material fact and the moving

15   party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see generally Anderson v.*

16   *Liberty Lobby, Inc.*, 477 U.S. 242, 247-55 (1986).  A fact is "material" if it may affect the outcome

17   of the proceedings, and an issue of material fact is "genuine" if the evidence is such that a reasonable

18   jury could return a verdict for the non-moving party.  *Id.* at 248.  The court may not make credibility

19   determinations.  *Id.* at 255.  The moving party bears the burden of identifying those portions of the

20   pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.

21   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial burden,

22   the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth

23   specific facts showing that there is a genuine issue for trial.  Fed R. Civ. P. 56(e); *see Anderson*, 477

24   U.S. at 250.

25

26

27

28
                                                    4

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

DISCUSSION

I.      Section 1983

The gravamen of plaintiffs' argument is that because Maurer gained free and preferential access to BART, the City and Chief are liable for Maurer's conduct under 42 U.S.C. section 1983.

In order to demonstrate a violation of 42 U.S.C. section 1983, plaintiff must demonstrate that defendants acted under color of state law. The traditional definition of acting under color of state law requires that the defendant in a section 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). A state actor acts under color of state law when he abuses the position given to him by the state. *West v. Atkins*, 487 U.S. 42, 49-50 (1988). "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50.

There is no rigid formula for determining color of law for the purposes of section 1983 liability. *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974). In order to determine color of law, a court must examine the totality of the circumstances. *Id.* at 550. In the Ninth Circuit, acts committed by a state actor even while on duty and in uniform are not necessarily under color of law unless they are related to the performance of governmental duties. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996). Officers who engage in confrontations for personal reasons unrelated to law enforcement, and who do not purport or pretend to be officers do not act under color of law. *Id.* However, an officer pursuing his own goals can act under color of law if he "purports or pretends" to do so. *Id.*

*Van Ort* is instructive. There, defendant sheriff conducted a narcotics search of the plaintiffs' residence. *Id.* at 833. During the search, he found no contraband, but did discover a safe containing cash, jewelry and other valuables. *Id.* A month later, defendant sheriff, while off-duty and not in uniform, forcibly entered plaintiffs' residence by using a gun. *Id.* It is unclear whether the gun was department-issued. Defendant sheriff then attacked and attempted to rob the plaintiffs. *Id.* at 834. The Ninth Circuit held that defendant sheriff did not act under color of law because he did not act

5

United States District Court

For the Northern District of California

1    pursuant to any government or police goal. *Id.* at 838. Specifically, defendant sheriff "exerted no

2    meaningful, physical control" over the plaintiff "on the basis of his status as a law enforcement

3    officer." *Id.* at 839.

4         There is no dispute here that Maurer: was off-duty and in plain clothes; did not flash his

5    badge at plaintiffs or bystanders; did not inform plaintiffs or others that he was a police officer; did

6    not attempt to arrest plaintiffs; and did not use the authority granted by the City to coerce plaintiffs in

7    any manner. Indeed, at no point during the altercation were plaintiffs aware that Maurer was a

8    policeman, and plaintiffs' friends and bystanders readily intervened during the assault. Nor is there

9    any evidence that the animus between Maurer and plaintiffs arose during the execution of Maurer's

10   official duties. *See Abudiab v. City & County of San Francisco*, No. C 09-1778 MHP, 2010 WL

11   2076022, at *3 (N.D. Cal. Apr. 12, 2010) (Patel, J.) (holding that personal animus that arose during

12   the course of official duties can lead to a finding of color of law). In order words, no color of law

13   exists because Maurer did not attempt to exercise any control over plaintiffs based on his status as a

14   police officer. *See Van Ort*, 92 F.3d at 839 (no color of law where officer "exerted no meaningful,

15   physical control" over the plaintiffs "on the basis of his status as a law enforcement officer.").

16        Plaintiffs' sole argument relating to color of law is Maurer's utilization of his status as a

17   police officer to gain expedited access to BART during Maurer's pursuit of plaintiffs. They claim

18   that "Defendant Maurer then used his expedited access to the BART system to his tactical advantage

19   by: searching through the crowd of BART patrons waiting in line to pay to get in, finding the

20   Plaintiffs amongst the crowd, and attacking Mr. Jackalone before he could fully enter the fare gate

21   and while he was in a vulnerable and veritably trapped position." Docket No. 30 (Opposition) at 14.

22   The expedited access, if any, was not necessarily a but for cause of plaintiffs' harm. Maurer could

23   have waited at the entrance, without entering the station, to assault plaintiffs. Maurer could have

24   also bought a ticket to access the BART facility. Even if but for the expedited access, Maurer could

25   not have assaulted plaintiffs, this argument does not demonstrate that Maurer used his authority to

26   exert control over plaintiffs. Just as in *Van Ort*, the alleged state actor's identity here was not

27

28

                                          6

United States District Court

For the Northern District of California

1    apparent.  Indeed, at no point did Maurer "purport to be acting as a policeman."  92 F.3d at 839.

2    Consequently, no color of law can be found.

3         *McDade v. West*, 223 F.3d 1135 (9th Cir. 2000), does not aid plaintiffs.  In that case of first

4    impression, the Ninth Circuit determined "whether a state employee who accesses confidential

5    information through a government-owned computer database acts 'under color of state law.'"  *Id.* at

6    1139.  The court held that the county employee acted under state law, not just because she used her

7    state-authorized password to enter the database, but because she committed an act that was related to

8    her official duties.  The state-employee's computer access privileges were "necessary to do her job."

9    *Id.* at 1140.  And, while acting under the pretense of performing her official duties, she accessed the

10   database during normal working hours, using computer equipment and a password supplied by the

11   County.  Unlike *McDade*, there was no pretense here.  BART access is not restricted to those with

12   police badges, nor is BART access necessary for Maurer to do his job.  Most importantly, Maurer

13   was not acting under the pretense of performing his official duties when he sought expedited and free

14   access.

15        Nor is plaintiffs' reliance on this Circuit's decision in *Anderson v. Warner*, 451 F.3d 1063

16   (9th Cir. 2006), helpful to them.  In fact, that case points up the deficiencies here.  In *Anderson* the

17   Ninth Circuit found that Warner was acting under color of state law "when he invoked his law

18   enforcement status to keep bystanders from interfering with his assault on Anderson."  *Id.* at 1068.

19   The court laid down "three critical requirements that must be satisfied":  (1) the acts complained of

20   must have been "'performed' while the officer is acting, purporting, or pretending to act in the

21   performance of his or her official duties"; (2) the "pretense of acting in the performance of his duties

22   must have had the purpose and effect of influencing the behavior of others"; and (3) the acts

23   complained of must be "'related in some meaningful way either to the officer's governmental status

24   or to the performance of his duties.'"  *Id.* at 1068-69 (quoting *Martinez v. Colon*, 54 F.3d 980, 987

25   (1st Cir. 1995)).  The acts about which the Jackalones complain did not occur when defendant Maurer

26   was flashing his badge or in any way identifying himself as an officer.  The only behavior influenced

27   by his display of office was that of the BART agent who gave Maurer access to the platform.  This is

28                                                         7

United States District Court
For the Northern District of California

1   not the conduct complained of and was neither seen nor known by the plaintiffs at any time during

2   the assaultive conduct of defendant Maurer.  Finally, the complained of conduct is not related "in

3   some meaningful way" to Maurer's official status or apparent performance of his duties.  The facts in

4   Anderson are markedly different from those here and the holding of that case persuades against

5   finding that Maurer was acting under color of state law.

6        Since Maurer was not acting under color of law, no derivative municipal liability can be

7   imposed.  *See Monell v. New York Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (local

8   government may be held liable "where implementation of its official policies or established customs

9   inflicts the constitutional injury.").  Therefore, summary judgment is granted in favor of the City and

10  Chief with respect to plaintiffs' first and second causes of action for violations of section 1983.

11  II.    <u>Vicarious liability</u>

12       The scope of employment is generally a question of fact.  *Perez v. Van Groningen & Sons,*

13  *Inc.*, 41 Cal. 3d 962, 968 (1986).  The issue becomes a question of law when the facts are undisputed

14  and no conflicting inferences are possible.  *Id.*  Defendants claim Maurer was not acting within the

15  scope of his employment because he engaged in criminal activity based on personal animus.

16  Defendants are correct for the reasons articulated above.

17       Plaintiffs claim that a reasonable fact-finder could find that because Maurer announced that

18  he was looking for someone who assaulted his friend, Maurer was acting within the scope of his

19  employment.  "Whether an employee substantially deviated, and, therefore, acted outside the scope

20  of employment, requires an inquiry into whether the wrongful act was committed in the course of a

21  series of acts of the agent which were authorized by the principal, not whether the act itself was

22  authorized."  *San Diego Police Officers Assn. v. City of San Diego*, 29 Cal. App. 4th 1736, 1743

23  (1994).  Here, however, no reasonable jury could find that Maurer's statement demonstrates that

24  Maurer was acting within the scope of his employment.  Maurer's complete failure to exert police

25  authority over anyone, let alone plaintiffs, conclusively demonstrates that Maurer was not acting

26  within the scope of his employment.

27

28
                                            8

**United States District Court**
For the Northern District of California

1    Plaintiffs also argue that Maurer's expedited access to BART demonstrates that Maurer was

2  acting within the scope of his employment. Plaintiffs' argument proves too much. At its logical

3  conclusion, use of any fringe employment benefit provided by the City in order to effectuate a crime

4  would create vicarious liability for the City. That is not the law. Instead, it is well-settled that where

5  an employee inflicts injury out of personal malice unconnected with his employment, the employee

6  is not acting within the scope of employment. *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.

7  4th 992, 1004-05 (1995). *Mary M. v. City of Los Angeles*, 54 Cal.3d 202 (1991), is distinguishable

8  because, as discussed above, Maurer did not misuse official authority to commit misconduct. There,

9  the officer was on-duty, uniformed, driving a marked patrol car, and pulled over the victim for a

10  traffic stop prior to raping her. Although an off-duty officer's misconduct can be within the scope of

11  employment under appropriate circumstances, no reasonable jury could find Maurer's conduct here

12  to be within the scope of his employment.

13    Finally, there is no evidence in the record that the assault was motivated by anything other

14  than personal animus unrelated to Maurer's duties as a police officer. The court need not engage in

15  unreasonable inferences—that Maurer was investigating a crime or attempting to effectuate an

16  arrest—when adjudicating the motion for summary judgment. Since no vicarious liability exists,

17  summary judgment is granted for the City and Chief with respect to plaintiffs' sixth cause of action

18  for negligent infliction of emotional distress.

19

20  <u>CONCLUSION</u>

21    Defendants' motion for summary judgment is GRANTED. The City of Fremont and Craig

22  Steckler are dismissed from this action.

23    IT IS SO ORDERED.

24  Dated: *September 13, 2010*

25                                              MARILYN HALL PATEL
                                                United States District Court Judge
26                                              Northern District of California

27

28                                        9